# IN THE COURT OF APPEALS OF IOWA

No. 16-0849
Filed September 27, 2017

**HARRY E. FOX, Executor of the Estate of CYNTHIA L. FOX, deceased,**
   Plaintiff-Appellant,

**vs.**

**MARK P. RECHKEMMER and RECHKEMMER AG ENTERPRISES, INC.,**
   Defendants-Appellees.
_____

   Appeal from the Iowa District Court for Fayette County, Richard D. Stochl, Judge.

   The plaintiff in a wrongful death suit appeals from the jury's verdict in favor of the defendant. **AFFIRMED.**

   Benjamin G. Arato and Robert G. Tully of Law Offices of Rob Tully, P.C., West Des Moines, for appellant.

   David L. Riley of McCoy, Riley & Shea, P.L.C., Waterloo, for appellees.

   Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Harry Fox, the executor of the estate of Cynthia Fox, appeals from the jury's verdict in a wrongful death suit in favor of the defendant, Mark Rechkemmer.[1] Fox raises a number of evidentiary issues in which he claims the district court abused its discretion; he maintains these rulings substantially affected the rights of the estate and asks that we remand for a new trial.

**I. Background Facts and Proceedings.**

On the morning of Friday, October 12, 2012, Cynthia Fox and Mark Rechkemmer each left their respective homes. Each drove on gravel roads, with Cynthia driving a TrailBlazer and Rechkemmer driving a TerrraGator, a piece of agricultural machinery with large tires and weighing approximately 20,000 pounds. They reached an uncontrolled intersection at approximately the same time, and the vehicles collided. Rechkemmer was thrown from his vehicle and survived, though he suffered a number of injuries and was hospitalized for almost two weeks. Cynthia died at the scene as a result of the collision.

The executor of Cynthia's estate (her husband) filed a wrongful death lawsuit. The matter proceeded to a jury trial in April 2016. At trial, an expert testified for each side, opining their party had entered the intersection first and was struck by the vehicle of the other driver. Additionally, Rechkemmer testified as to his memories of the morning in question, including stating that he had slowed down and looked both ways—not seeing a vehicle—before he started to speed back up to approximately thirty or thirty-five miles per hour as he entered the intersection.

---

[1] We refer to the defendants-appellees as Mark Rechkemmer throughout.

The jury was instructed to determine the comparative fault of both Cynthia and Rechkemmer, considering whether each was negligent in one or more ways, including the failure to maintain a proper lookout, failure to yield his or her vehicle in an uncontrolled intersection, and failure to maintain proper control of their own vehicle.

The jury returned a verdict finding both Cynthia and Rechkemmer at fault. The jury apportioned 60% of the fault to Cynthia and 40% to Rechkemmer. The court then dismissed the estate's wrongful death claim.

Fox appeals.

## II. Standard of Review.

We generally review a district court's evidentiary rulings for an abuse of discretion. *See Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 149 (Iowa 2002) ("[T]rial courts are granted broad discretion concerning the admissibility of evidence."). "Reversal [is] warranted only if the trial court 'clearly abused its discretion to the prejudice of the complaining party.'" *Id.* (quoting *Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 640 (Iowa 1997)).

## III. Discussion.

Fox maintains the district court abused its discretion in deciding a number of evidentiary issues. We consider each in turn.

### A. Opening Statement.

During the defense's opening statement, defense counsel asked the rhetorical question, "So if [Cynthia] sees this TerraGator coming and realized that there's about to be a collision, and she's only going 20 miles an hour and has steering control, why wouldn't she have steered away to one ditch or the other?"

Fox maintains this statement was an impermissible form of arguing the defendant's case during opening arguments. More specifically, he claims Rechkemmer "planted an unanswerable question in the minds of the jury that could only cause the jury to speculate through the entire trial why Cynthia Fox chose one form of danger—the intersection, over another—the ditch."

Iowa Rule of Civil Procedure 1.919(2) allows defense counsel to briefly "state that party's defense and evidence." "Under this rule, counsel should only tell the jury about evidence that counsel has a good faith believe will be offered and admissible." *Kester v. Bruns*, 326 N.W.2d 279, 281 (Iowa 1982). Here, we note that one of Fox's experts testified both that Cynthia's vehicle was traveling twenty miles per hour or less at the time of the collision and that her vehicle was equipped with an antilock brake system, meaning she still had the ability to steer the vehicle up until the point of impact. The expert assumed this was a reduction in speed and used that assumption to say he believed Cynthia saw the TerraGator before the collision in the intersection. Rechkemmer's expert testified otherwise, opining Cynthia's vehicle was traveling forty to forty-five miles per hour at the time of impact and noting there was nothing which indicated she had reduced her speed or taken an evasive action—presumably because she did not see the TerraGator until impact. In the larger context, defense counsel's statement compared the opinion of the defense's expert witness with that of one of the plaintiff's expert witnesses.

Even if we found the trial court had abused its discretion in overruling Fox's objection to the statement—Fox's fourth during the defense's opening statement—we cannot find the statement was prejudicial as to warrant a new

trial. Before either parties' opening statement, the court advised the jury that "[t]he statements [the attorneys] make are not evidence and may not be considered by you as evidence. Also any statement they make as to the law is not to be considered as the law of the case." Similarly, one of the jury instructions stated:

> You shall base your verdict only upon the evidence and these instructions. Evidence is:
> 1. Testimony in person or by deposition.
> 2. Exhibits received by the court.
> 3. Stipulations which are agreements between the attorneys.
> 4. Any other matter admitted (e.g. answers to interrogatories, matters which judicial notice was taken, and etc.).

"A jury is presumed to follow the instructions of the court." *State v. Ondayog*, 722 N.W.2d 778, 785 n.2 (Iowa 2006). And Fox has not shown any evidence indicating the jury failed to follow the instructions here. *Id.*

Moreover, the only case Fox cites to support his claim defense counsel's statement was improper and warrants new trial is *Kester*, 326 N.W.2d at 281. In *Kester*, defense counsel in a negligence action arising from a car-pedestrian accident stated twice in his opening statement that police officers had reached the conclusion the plaintiff was at fault. 326 N.W.2d at 280–81. Defense counsel stated as much even though he "should have known that police officers would not be permitted to express opinion on fault," and "although invited by the court to make a proffer of any such opinion evidence out of the presence of the jury, counsel did not attempt to offer the officers' views." *Id.* at 281. Our supreme court found "counsel was at least reckless in his opening statement in representing what would be shown through police testimony" and "agree[d] with the trial court that the remarks should not have been made." *Id.* Yet the

supreme court did not find reversible error because "the [trial] court exercised its discretion," and the supreme court was "unable to say, under the whole record, that the trial court exceeded the bound of fair discretion in its ruling." *Id.*

**B. Vehicle Warnings.**

Before trial began, Rechkemmer filed a motion in limine, asking the court to rule Fox could not present evidence the TerraGator had a sticker on the steering wheel that warned against exceeding thirty miles per hour because "tires may overheat and fail causing injury or death." During the hearing on the motion, the court noted there was a request for a ruling on evidence both of the sticker with the speed warning and that Rechkemmer was not wearing his seatbelt at the time of the collision. The following exchange occurred between the court and plaintiff's counsel:

> THE COURT: Do I have any testimony . . . from an expert that [Rechkemmer's] failure to wear a seatbelt in any way affected the cause of this accident, or is this simply to say, hey, this guy's a reckless dude and he runs around not wearing seatbelts, and if he's that reckless, what kind of behaviors are we—can we expect from this guy and we need to protect society from . . . reckless individuals like that? And if that's the point, I want you to tell me that.
> PLAINTIFF'S COUNSEL: . . . I think the court actually laid that out extremely well. Here's—in all cases that I've had involving—whether it be the Department of Transportation, professional truck drivers or the average Joe driving a car, knowing, one the rules of the road but, two, understanding the safety requirements of the vehicles they are driving. In this particular case, the manual that I think counsel in one of his responses indicates that his client never read once, indicates that there are various things on how to operate this particular TerraGator which was important in my questioning of him how he went through the gears, what gear he was at the time of the collision, but also—and it goes to the sign which we've referenced earlier that you must not drive faster than 30 miles an hour with this vehicle. The defendant admitted that he was driving 30 to 35 in excess of the warning system that is place on a—

THE COURT: Well, and we're going to get to that. I mean, I have read that and it says don't do this or your tires are going to blow up. And once again, is there going to be any expert testimony that the tires somehow malfunctioned which rendered this accident?

PLAINTIFF'S COUNSEL: No, Your Honor, but it goes to this witness, i.e., the defendant, and his attitude towards safety in driving this vehicle. Now, I understand the court's going to say, well, unless it's absolutely linked to the collision itself, it's irrelevant, but it's not irrelevant to the safety of an individual driving these types of devices across the roadways. And if he's not paying attention to them, that generally goes to his lack of care as an individual driving, and it will certainly carry over, Your Honor. If he doesn't read that or he doesn't look and follow what it says right in front of him, he very well may not look to the left to see if there's a vehicle coming. And I think it goes to this particular defendant, what he thinks about safety and how he operates a vehicle.

. . . .

All I'm saying, Your Honor, is, Your Honor, this guy picks and chooses what he's going to follow and what he's not going to follow. I think the jury's entitled to see what he does in terms of the safety in putting this vehicle out and how he reacts to the safety around people.

THE COURT: Okay. Now, tie that in for me as to what happened in this accident. Tie it in. Tell me how his failure to have his seatbelt on, how his operating between 30 and 35 miles an hour and his failure to have a slow moving vehicle sign on the rear . . . how those three things had any impact on this accident itself other than to say and try to paint this man as a reckless individual based on those things. And am I going to hear from anybody that any of these things contributed to this accident? . . .

PLAINTIFF'S COUNSEL: . . . I want to say it's about for the limited—limited purpose of showing this particular person's recklessness in operating a vehicle and/or in and on our public highways.

Rechkemmer replied the court should rule the evidence was inadmissible because it was character evidence, expounding, "So this tendency to make him sound like an unsafe person, therefore, we can assume he was acting unsafe at the time of the accident . . . that's clearly not how you prove negligence and it's character evidence."

The court granted Rechkemmer's motion in limine, excluding any evidence of the sticker warning the driver not to exceed thirty miles per hour.

Iowa Rule of Evidence 5.404(b)(1) prohibits the introduction of "[e]vidence of a crime, wrong, or other act" "to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character." However, the evidence "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2). During the hearing on the motion in limine, Rechkemmer explicitly argued the evidence should be excluded because it was improper character evidence. The court's ruling granting the motion also made clear the evidence was being excluded because Fox was trying to use it to convey that Rechkemmer was a reckless person, stating:

> The basis of my ruling is that I'm granting the motion in limine that we're not talking about the manual, we're not talking about the no seatbelt, we're not talking about the fact that there was no slow moving vehicle sign on the back of the vehicle, we're not talking about the sticker, because none of it has anything to do with this accident other than to try to convey upon the defendant an image that he is reckless individual who is operating a vehicle in a reckless manner . . . .

In determining whether prior-bad-acts evidence should be admitted, we rely on a three-step analysis. *See State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014). First, we "must determine whether the evidence is relevant to a legitimate, disputed factual issue." *Id.* Second, we consider if there is "clear proof of the individual against whom the evidence is offered committed the bad act or crime." *Id.* And finally, if the first two steps have been met, we "determine whether the evidence's 'probative value is substantially outweighed by the

danger of unfair prejudice to the defendant.'" *Id.* (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)).

Here, Fox maintains the evidence should have been admitted because it was relevant as to the legitimate, disputed issue of whether Rechkemmer met the duty of exercising reasonable care. First, we note the jury was not asked to decide generally whether Rechkemmer exercised reasonable care in driving the TerraGator. The jury was instructed—and Fox did not ask for it to be instructed otherwise—to decide whether "Rechkemmer was negligent in one or more of the following ways." The jury was then given three options: failing to maintain a proper lookout, failing to yield his vehicle in an uncontrolled intersection, and failing to maintain proper control of his vehicle. Fox did not argue before the district court, and he does not now explain, how a sticker stating tires may fail at speeds over thirty miles per hour affected Fox's exercise of reasonable care in the three ways provided above. Similarly, although he cites case law stating a violation of privately set safety standards "is evidence on the issue of negligence," he has not—as the district court asked him to—"tied in" how a warning about speed affecting tires relates to the collision itself.

Fox argues the jury should have been told about the sticker warning because the circumstances surrounding Rechkemmer's operation of the TerraGator tended to show he lacked due care. In making this argument, Fox cited *Yost v. Miner*, 163 N.W.2d 557, 561 (Iowa 1968), in which our supreme court determined the "[e]vidence of an intoxicated condition is properly admissible as one of the circumstances surrounding conduct showing a lack of due care under the circumstances." Fox analogizes that failing to drive the

TerrraGator as advised by the sticker is a similar "circumstance surrounding conduct" as that of driving while intoxicated. In *Yost*, the question for the jury was whether the defendant's intoxicated state had a causal connection to the accident. 163 N.W.2d at 561. But here, Fox maintains the evidence of the existence and content of the sticker was relevant to Rechkemmer's duty to act reasonably. Also, Fox agreed with the trial court that there would not be a "duty by sticker."

Fox also claims the speed was relevant to the element of causation. Fox maintains the speed of Rechkemmer matters because "but for" Rechkemmer's speed of thirty to thirty-five miles per hour, the vehicles would not have met in the intersection at the moment they did. First, this is an incorrect use of the "but for" test. *See Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 741 (Iowa 2009) (citing a case where a speeding trolley was struck by a falling tree and the court held the causation requirement was not met; "[t]his result was correct since, although the accident would not have occurred but for the trolley's speeding, speeding does not increase the probability of trees falling on trolleys"). And second, the jury was apprised of the speed Rechkemmer was traveling in the TerraGator; the jury was not apprised of the fact that a sticker existed.

Finally, we consider Fox's argument the court used the wrong standard during its consideration of the evidentiary issues. Fox argues the court focused on the standard of "recklessness" rather than that of "ordinary care,"—a standard benchmark in negligence cases. Our review of the record shows the court was not using the term "recklessness" or "reckless" as a legal standard but rather as a trait or character description. And, in fact, Fox repeated the term when he

explained why he believed the evidence should be admitted, stating, "I want to say it's about for the limited—limited purpose of showing this particular person's recklessness in operating a vehicle and/or in and on our public highways." Here, the jury was properly instructed in its duty to determine whether Rechkemmer was negligent and whether such negligence caused the injuries complained of. Additionally, negligence was properly defined in the jury instructions.

Because Fox attempted to use evidence Rechkemmer failed to heed warnings as improper character evidence, and Fox has not established why the evidence was otherwise relevant to a legitimate, disputed fact, the district court did not abuse its discretion in excluding the evidence.

### C. Rechkemmer's Measurements.

Fox maintains the district court abused its discretion when it allowed Rechkemmer to testify about measurements he had taken after Fox deposed him and before trial began; Fox claims this is a "discovery issue."[2]

In a deposition of Rechkemmer on May 8, 2015, the following exchange took place between plaintiff's counsel and Rechkemmer.

> Q. . . .Tell us what you did.  A. As I approach the intersection, I usually slow down to about 20 and I look to the right and I look through the—when there's corn in that field, I look through the substation, and I can't even remember if I've ever seen a car since then at the intersection.  But as I go through it, I speed back up to what I've been running and continue on down the road.

---

[2] Insofar as Fox maintains we should consider whether this is a "sanctionable" discovery issue, that claim has not been preserved for our review.  Fox filed no motion for sanctions, and he never asked the district court to consider whether Rechkemmer should be sanctioned.  *See Grinnell Coll. v. Osborn*, 751 N.W.2d 396, 404 (Iowa 2008) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Q. Okay. And how long does that take you? A. I don't carry a stopwatch to tell you. How long does it take to run a hundred feed at 20 mile an hour?

Q. Well, sir, I'm sorry, but the jury needs to hear the testimony from you, not me. A. As I said, I'm not an expert at running that so I can't—

Q. But you ran it hundreds of times before. A. Without—with looking at the road and not counting one thousand one, one thousand two, one thousand three, one thousand—you know—

Q. Well— A. You're asking me a question that I'm am not qualified to answer, I guess. I'm not qualified to answer it.

Q. Well, I think you're qualified to answer the question, sir. The question is whether you can answer it. A. Well—

Q. Just listen carefully. Let's give the jury an idea, because right now they have no idea. So does it take 15 minutes, 20 minutes, a half hour, an hour to get back up to speed? A. To get back to—to get back up to speed—

Q. Yes, sir. A. –probably takes less than 15, 20 seconds.

During the plaintiff's case-in-chief, the deposition was read into evidence. During the defense's case, while Rechkemmer was testifying, defense counsel indicated he intended to ask Rechkemmer about his statement in his deposition and whether he had since had the chance to time how long it took for him to return to speed in the TerraGator. Fox objected, claiming it was "testimony by ambush" and Rechkemmer was unfairly changing his testimony. The court ruled defense counsel could ask the question, and Rechkemmer testified that when he timed how long it took for him "to get from 20 miles an hour back up to 30 to 35 miles an hour," it took him six seconds.

Fox has not provided a rule he believes the admission of the new testimony violated, and he does not argue the testimony fell within expert opinion testimony that should have been disclosed thirty days before trial. *See* Iowa R. Civ. P. 1.508(3) ("Any additions or changes to [the expert's report] must be disclosed no later than 30 days before trial."). He maintains the "results of

[Rechkemmer's] experiments" needed to be disclosed prior to trial, but he does not provide authority for the claim.

Without authority for the proposition that Rechkemmer's testimony should be excluded, we cannot find the district court abused its discretion in admitting it. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Moreover, we cannot find the testimony prejudiced Fox's substantial rights. Insofar as Rechkemmer's answer to the question was not exactly as he had testified in his deposition, Fox was free to impeach him—a point the district court made in its ruling admitting the evidence. *See* Iowa R. Civ. P. 1.704(1) (providing any part of a deposition may be used "[t]o impeach or contradict deponent's testimony as a witness"). And while Fox maintains he would have required a continuance to properly rebut Rechkemmer's testimony, Fox failed to request a continuance from the district court.

### D. Evidence of Failure to Wear Seatbelt.

Fox argues he should have been allowed to introduce evidence Rechkemmer "failed to mitigate his damages." More specifically, Fox complains he should have been allowed to present evidence that Rechkemmer was not wearing his seatbelt when the collision occurred.

Fox has failed to make a cognizable claim. Rechkemmer's counterclaim was settled before the start of trial; in other words, Rechkemmer did not have a claim involving his damages, and the jury was not asked to consider any damages he may have incurred. Additionally, the district court did not exclude all evidence concerning Rechkemmer's failure to wear a seatbelt. Rather, the court

ruled "it can come in for purposes of showing how his body reacted within the cab." The court prevented Fox from using the evidence to "argue that Rechkemmer's failure to wear a seatbelt somehow is reckless behavior on his behalf."

Insofar as Fox now claims he should have been allowed to state Rechkemmer was not wearing a seatbelt in order to "combat the jury's sympathies" toward Rechkemmer, the court's rulings gave Fox the leeway to do so.

**IV. Conclusion.**

Having considered each of Fox's claims and finding no reversible error, we affirm.

**AFFIRMED.**